(113 So. 135)

No. 26562.

JOHNSTON et al. v. COLE.

April 25, 1927.   Rehearing Denied May 23, 1927.

*(Syllabus by Editorial Staff.)*

1. Brokers ☞61(1)—Brokers, suing on special contract, held not entitled to commission for bringing parties together, where sale was not consummated because of defective titles.

Real estate brokers, suing on special contract for commission depending on consummation of sale and receipt of full purchase price by vendor, *held* not entitled to recover for bringing parties together, where sale was not consummated because of defective titles.

2. Brokers ☞61(1)—Brokers, fully advised of title defects, held bound by arrangement for retention of part of price until adjustment of titles.

Real estate brokers, fully advised of defects in titles to tracts before agreement to sell them, *held* bound by arrangement made with purchaser by owner's attorney, with brokers' knowledge and approval, for retention of part of price by former pending adjustment of titles.

3. Estoppel ☞27(1)—Owner, sued for commission, held not estopped to show failure to consummate sale by execution and recordation of deed acknowledging receipt of consideration.

Owner, sued for commission, *held* not estopped to show brokers' failure to consummate sale of plantation by execution and recordation of deed of sale acknowledging receipt of consideration; brokers not being bound by recitals of agreement between vendor and vendee, if not parties thereto, and concluded by stipulations thereof, if parties.

Appeal from Sixth Judicial District Court, Parish of Ouachita; Fred M. Odom, Judge.

Action by E. B. Johnston and another against Herbert C. Cole. Judgment for defendant, and plaintiffs appeal. Affirmed.

Newton, Garrett & Newton, of Monroe, for appellants.

Hudson, Potts, Bernstein & Sholars, of Monroe, for appellee.

ROGERS, J.   Plaintiffs brought this suit to recover $7,000 as their commission on a contract for negotiating the sale of a certain plantation owned by defendant in Morehouse parish, this state. The court below rejected their demand, with reservation of their rights to sue on a quantum meruit. They are prosecuting this appeal from that judgment.

It appears from the record that defendant, being desirous of selling the plantation in question, entered into certain dealings with the plaintiffs in regard thereto, with the result that they produced one John B. Grieves, a resident of the state of Oklahoma, as a

prospective purchaser. In the negotiations which then ensued, defendant expressed his desire to retain one-half of the mineral rights; but, when informed by plaintiff Johnston that the prospective purchaser would insist upon the transfer of all the mineral rights with the land, he demanded $50,000 net for himself, but finally, in order not to "kill the sale," he agreed to accept $45,000 net for the property, all over that amount to be paid to plaintiffs for their services in the transaction. These negotiations were verbal. On October 1, 1920, a formal agreement of sale was entered into between defendant and the purchaser, Grieves, for an agreed price of $52,000. The day after this agreement was signed, the defendant, in confirmation of his previous oral understanding with the plaintiffs relative to their compensation, addressed and delivered to them the letter which is the basis of the present suit.

According to the terms of this document, defendant agreed as follows, viz.:

"* * * In the event the sale is consummated, and Mr. Grieves pays me the amount of money stipulated in the contract—that is, $52,000—I am to receive out of the proceeds of the said sale the net sum of $45,000, and you $7,000 as your commission for making the sale."

The agreement also contained a provision for the division between the parties of $5,-000 deposited by the purchaser to bind the sale, in the event of its forfeiture by reason of the refusal of the purchaser to carry out his contract.

The evidence shows that the defendant advised plaintiffs and the prospective purchaser, before any agreement to sell was entered into, that the titles to two 40-acre tracts were defective, although he was under the impression the title to one of them had been cleared up by an attorney, since deceased, of Morehouse parish, who had been employed for the purpose. It was then understood and agreed between the parties that defendant would be afforded the opportunity of curing the defective titles; and it was stipulated in the agreement of sale that the vendor should have a reasonable time within which to perfect any defective titles that might be disclosed by the abstracts.

The necessary abstracts were prepared under the direction of defendant's attorney and forwarded by him to the purchaser's attorneys, Bartlesville, Okl., who noted the defects of title to the two 40-acre tracts. The defect in one of the tracts was the result of a conflict with the state of Louisiana, and the defect in the other tract arose by reason of an adverse claim thereto by the federal government.

Notwithstanding the expenditure of approximately $3,000 for the purpose, defendant encountered unexpected delay and difficulty in his attempt to cure the defects in the titles, and, by reason thereof, the purchaser expressed a desire to recede from the agreement and to allow the deal to fall through. In this situation, the attorney of defendant, with the knowledge and approval of the plaintiff Johnston, entered into an arrangement with the purchaser, whereby it was agreed that he would retain $15,000 of the purchase price pending the adjustment of the titles to the two 40-acre tracts. An act of sale was then executed of the whole property for a recited consideration of $52,000 cash. Contemporaneously therewith the parties agreed in writing that the vendor was to retain $15,000 of the purchase price, of which amount $7,500 was to be paid defendant if he perfected his title to the federal government 40 in 90 days, and the remaining $7,500 was to be paid him if he perfected his title to the state 40 within 12 months. As a result of these transactions, defendant received only $37,000 of the purchase price set forth in the act of sale. At the time the present suit was instituted, although it appears that he had effected an arrangement with the state concerning the

title to the tract claimed by it, he had received no further payment from the purchaser. In so far as the tract affected by the interest of the federal government is concerned, defendant was unable to remedy the defect in the title to the satisfaction of the purchaser.

Defendant in his answer averred that plaintiffs, having elected to sue on a contract, are not entitled to recover on a quantum meruit, but that "he is willing, and has at all times been willing, and has frequently offered to pay to the said Johnston a reasonable and proper commission on the amount actually received by him," although it is much less than the sum it was agreed he should receive before any commission whatsoever would be due to the plaintiffs.

[1] Plaintiffs argue, and cite numerous authorities to support the argument, that, having acted as real estate brokers to bring the parties together, they are entitled to their commission, and their right thereto cannot be defeated, because the sale, owing to the defective titles, was not consummated as originally agreed upon. The argument and the authorities cited, however, are not applicable to the facts of the case. Plaintiffs are not suing to recover the usual commission, based on a fixed percentage, of real estate brokers. Their action is founded on a special contract. Their recovery thereunder is dependent, first, upon the *consummation of the sale;* and, secondly, upon the receipt by the vendor of the full purchase price as set forth in the agreement. Neither of these essentials are present here.

[2] Plaintiffs' contention that they are not bound by the arrangement made by defendant's attorney with the purchaser is not sound. Plaintiffs were fully advised of the defects in the titles to the tracts in question, and any services performed by them in connection with the sale of the property must be held to have been performed subject to whatever consequences might flow therefrom. But for the supplemental agreement entered into between defendant and the purchaser with plaintiffs' knowledge and approval, the sale would have failed entirely, and plaintiffs would have no right to demand and recover from defendant any commission whatsoever.

[3] Plaintiffs filed a plea of estoppel, in which they averred that defendant was estopped to show the true facts because of the execution and recordation of the deed of sale, in which the vendor acknowledged the receipt of a consideration of $52,000. The plea is untenable for either of two reasons, viz.: If the plaintiffs were not parties to the agreement between the vendor and the vendee, then, as strangers to the deed, they are not bound by its recitals and cannot invoke an estoppel based thereon. On the other hand, if they were parties to the agreement in question, they are, unquestionably, concluded by the stipulations thereof.

Our conclusion is that the judgment of the court below is correct.

For the reasons assigned, the judgment appealed from is affirmed, at the cost of the appellants.